## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 08-CR-153 (CKK)** |
| | : | |
| **RONALD G. PAYTON,** | : | |
| **Defendant.** | : | |
| | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons set forth herein, defendant should be sentenced to a period of probation and ordered to pay the full restitution amount agreed upon by the parties to the victim in this case, the United States.

### I. **Factual Background**

During the plea proceedings, defendant agreed with the Statement of Offense submitted to the Court by the government, which has been incorporated into the Presentence Investigation Report ("PSR"). See PSR ¶¶ 6-15. In summary, defendant, a 24-year-old former contract investigator at U.S. Investigations Services, Inc. ("USIS"), falsified work on background investigations of federal civilian employees. Between October 2007 and February 2008, in at least six Reports of Investigations ("ROI's"), defendant stated that he had interviewed a source regarding the subject of the background investigation when, in fact, he had not conducted the interview. Beginning in or about July 2007, in at least five ROI's, defendant stated that he had reviewed records obtained by him when, in fact, he had not obtained those records. In his ROI's,

defendant also fabricated answers to questions that he had forgotten to ask in interviews that he had actually conducted.  All of these ROI's were utilized and relied upon by the agencies requesting the background investigations to determine whether the subjects of the investigations were suitable for positions having access to classified information, for positions impacting national security, or for receiving or retaining security clearances.

II.  **Defendant's Plea**

On May 27, 2008, the government filed a one-count Information charging defendant with Making a False Statement, in violation of 18 U.S.C. § 1001.  On June 10, 2008, defendant pled guilty to the Information.  Sentencing is now set before the Court on September 15, 2008, at 9:00 a.m.

As set forth in the written plea agreement, defendant and the government agreed that the defendant's base offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is 6, pursuant to U.S.S.G. § 2B1.1(a)(2).  (PSR ¶ 5.)  Defendant and the government also agreed to an addition of 2 levels for "Loss greater than $5,000," pursuant to U.S.S.G. § 2B1.1(b)(1)(B), and a two-level increase for obstructing justice, pursuant to U.S.S.G. § 3C1.1.  (Id.)  Pursuant to the plea agreement, defendant is entitled to a two-level decrease in the offense level based upon his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). (Id.)

III.  **Defendant's Total Offense Level is 8**

The PSR has correctly calculated defendant's adjusted offense level at 10.  (PSR ¶ 26.) This includes the base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a)(2), an addition of 2 levels for "loss" of over $5,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(B), and a two-level increase

for obstructing justice, pursuant to U.S.S.G. § 3C1.1.  The PSR has also correctly calculated

defendant's total offense level at 8.  (PSR ¶ 29.)  This includes a two-level decrease in the

offense level for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).  For the

reasons set forth, underline infra, in Part IV of this Memorandum, the government is seeking imposition of

a sentence of probation, which is within the prescribed Guideline range.

     A.  Loss Valuation is Properly Calculated at Over $5,000.

     As part of his plea before the Court, defendant has agreed that the total loss in this case is

greater than $5,000.00.  (See PSR ¶ 5.)

     Valuation is governed by U.S.S.G. § 2B1.1(b)(1) and includes all relevant conduct.  See

U.S.S.G. § 1B1.3(a)(2) (same course of conduct or common scheme or plan as the offense of

conviction).  For purposes of sentencing, the "loss" is the greater of either the actual loss or the

intended loss.  U.S.S.G. § 2B1.1, comment (n. 3); see also United States v. Manas, 272 F.3d 159,

165 (2d Cir. 2001) ("Consistent with the provisions applicable to conspiracy cases, the

Commentary [of section 2F1.1] states that 'if an intended loss that the defendant was attempting

to inflict can be determined, this figure will be used if it is greater than the actual loss."), cert.

denied, 537 U.S. 1023 (2002);  United States v. Studevent, 116 F.3d 1559, 1561 (D.C. Cir. 1997)

(finding actual loss should not limit the amount of intended loss attributed to defendant's crime

under § 2F.1.1).  "Actual loss" means the reasonably foreseeable pecuniary harm that resulted

from the offense while "intended loss" includes pecuniary harm that was intended to result from

the crime as well as intended pecuniary harm that would have been impossible or unlikely to

occur (e.g., an insurance fraud in which the claim exceeded the insured value).  U.S.S.G. §

2B1.1, comment (n. 3(A)).

The sentencing judge is "in a unique position to assess the evidence and estimate the loss based upon that evidence," and the Court need only make a "reasonable estimate of the loss." U.S.S.G. § 2B1.1, comment (n.3). The Court need not determine the value of the loss with any degree of precision; a reasonable estimate of the loss based on the available evidence will suffice. See United States v. Carter, 412 F.3d 864, 839 (8th Cir. 2005); United States v. Resurreccion, 978 F.2d 759, 762 (1st Cir. 1992) (intended loss should be used in sentencing, even if imprecise, when larger figure than actual loss).

As already noted, defendant agreed in the written plea agreement to a loss amount greater than $5,000. (PSR ¶ 5.) Unlike so many white-collar defendants who stubbornly resist admitting what they have done, defendant came in early and admitted his misconduct. His admissions will likely help the United States Office of Personnel Management, Federal Investigative Services Division ("OPM-FISD") focus its recovery efforts and spare the government the cost of a full recovery operation. OPM-FISD has estimated the cost of a limited recovery operation at $10,000. Therefore, a two-level increase for a loss greater than $5,000 is appropriate.

B. A Two-Point Enhancement for Obstructing Justice Applies.

Defendant does not dispute the addition of this enhancement. As defendant admitted during his plea, in or about April 2008, defendant began calling a source, whose interview he had falsified, and leaving lengthy voice-mail messages asking her to state falsely that she had been interviewed by him. (PSR ¶ 11.) The inclusion of the obstruction adjustment in the Guideline calculation properly holds defendant accountable for his conduct.

IV. **Defendant Should Be Sentenced to a Period of Probation.**

The government respectfully submits that the factors set forth at 18 U.S.C. § 3553(a)

support the sentence to which the parties have agreed, a sentence which falls within the range

recommended by the Sentencing Commission.[1]

A.  Nature of the Offense

Defendant admitted during the plea proceedings that over a period of eight months he

falsified work on background investigations of applicants for federal employment and security

clearances.  As a background investigator for the federal government, defendant was – or should

have been – aware of the importance of his work and the critical elements of trust and ethics

inherent in his position.  As Joy Fairtile, Deputy Associate Director of OPM-FISD, explained, all

background investigators for OPM receive an investigator's handbook, the first chapter of which

is entitled "Investigator's Qualities, Conduct, Responsibilities, and the Government Code of

Ethics," and which admonishes investigators that they must "NEVER falsify, manufacture, or

enhance testimony, or in any way misrepresent any information collected from sources."

Government Exhibit 1, p.2.  Yet, defendant chose to flagrantly disregard this most basic duty – to

---

[1]As this Court is aware, the district court needs to consider the goals of Section 3553 in determining the appropriate sentence, however, the court is not required to specifically refer to each factor listed in § 3553(a).  See United States v. Ayers, 428 F.3d 312, 315 (D.C. Cir. 2005). Section 3553(c) provides that the court at the time of sentencing shall state in open court the reasons for its imposition of a particular sentence.  Section 3553(a) specifically sets out the factors to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the . . . offense . . . as set forth in the guidelines . . . (5) any pertinent policy statement issued by the Sentencing Commission . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

accurately report the results of his investigations. He did so knowing full well that federal agencies were relying on both the substance and integrity of his investigative reports in making hiring and security clearance determinations. His conduct was intentionally deceptive and carried out over the course of more than half a year. Indeed, had he not been caught, it is more than likely that he would have continued to falsify his work on background investigations.

B. <u>History and Characteristics of the Defendant</u>

Defendant's history and characteristics suggest that a sentence of probation is appropriate and that no fine is required. Defendant is only 24 years old, has no criminal record, and has few resources. (PSR ¶¶ 30-31, 51-55.) Defendant has no serious physical, mental, or emotional conditions. He has a devoted mother who has continued to support him emotionally and financially throughout these criminal proceedings. (PSR ¶¶ 36, 40, 53.) He has a college degree and is scheduled to begin classes in a Masters of Business Administration ("MBA") graduate program in September. (PSR ¶¶ 45-46.) As stated previously, he admitted his guilt early and endeavored to assist OPM in detecting his falsifications and focusing its recovery efforts. He was truly ashamed and wanted to right the wrong he had committed.

C. <u>The Need for the Sentence to Reflect the Seriousness of the Offense</u>

The issuance of a security clearance or a job offer to someone whose background has not been properly investigated can pose a serious risk to national security and to the effectiveness of the federal civilian workforce. As Deputy Associate Director Fairtile explained, "agencies rely on the integrity and completeness of OPM's background investigation when making their adjudicative decisions." Government Exhibit 1, p.1. Deputy Associate Director Fairtile further

stated that "the integrity of an OPM background investigation is paramount to protecting national security and promoting the efficiency of the Federal service." Id.

Even where a source whose interview was falsified by defendant is later interviewed and provides no derogatory information about the applicant, the damage to the integrity of the investigation remains. As Deputy Associate Director Fairtile explained,

> Any question concerning the accuracy and truthfulness of the testimonies in the report of investigation makes the entire investigation suspect. It does not matter if the source would provide favorable information anyway or that a record check would have disclosed no record. The fact that testimony was attributed to a source who was not interviewed or the result of a record check was provided when the record was not checked is enough to raise doubts about the entire investigation and the other work the investigator claimed to have performed.

Government Exhibit 1, p.1. Upon discovering a falsified interview or record check in an ROI, OPM must recontact all sources in the ROI and remove all falsified entries from the ROI in order to ensure that the ROI is completely accurate. OPM generally replaces any falsified testimony with either new testimony obtained from the source in question or testimony obtained from one or more additional sources. As Deputy Associate Director Fairtile stated, the "cost of investigating and correcting the investigator's cases is substantial – both in time and money." Government Exhibit 1, p.2. Beyond the cost of the recovery effort, Deputy Associate Director Fairtile explained that the "risks posed to National Security are an intangible item and cannot be measured." Id.

      D. The Need for the Sentence to Afford Adequate Deterrence

Given defendant's early admission of guilt and his cooperation with OPM-FISD, it is unlikely that defendant will commit additional crimes in the future. This reduces the need for specific deterrence of defendant through imposition of a harsher sentence than that to which the

parties have agreed.  The sentence to which the parties have agreed should be sufficient to promote respect for the law and, as Deputy Associate Director Fairtile explained, "to show [that] this type of conduct is not tolerated by the Court or OPM."  Government Exhibit 1, p.3.

      E.  <u>The Need for the Sentence to Provide Educational or Other Benefits</u>

Unlike many of the defendants who appear before this Court, defendant has no need for the sentence to provide him educational or vocational training.  Defendant has had the benefit of post-secondary education and on-the-job training and, as previously mentioned, is starting a graduate program to obtain an MBA.

## IV. **<u>Restitution</u>**

As set forth in the written plea agreement, defendant agreed to pay restitution in the amount of $10,000 to the United States.  (PSR ¶ 4.)  Accordingly, the Court should order restitution in this amount.

## **CONCLUSION**

WHEREFORE, the government respectfully requests that this Court impose a sentence of

probation and order defendant to pay restitution to the United States Treasury.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney


_____/s/_____

ELLEN CHUBIN EPSTEIN, DC Bar 442861
THOMAS E. ZENO, DC Bar 348623
Assistant United States Attorneys
Fraud & Public Corruption Section
555 Fourth Street, N.W., 5th Floor
Washington, DC 20530
(202) 514-9832
Ellen.Chubin@usdoj.gov
(202) 514-6957
Thomas.Zeno@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of
Sentencing has been served by ECF notification upon counsel for defendant Patrick J. Devine,
Esq., and by fax upon Kelli Cave, U.S. Probation, fax 202-273-0242, on this 29th day of August,
2008.


_____/s/_____
ELLEN CHUBIN EPSTEIN
ASSISTANT U.S. ATTORNEY

# EXHIBIT 1

## VICTIM IMPACT STATEMENT for Ronald Payton, 1:08cr153-01

The Office of Personnel Management's (OPM) mission is to ensure the Federal Government has an effective civilian workforce. To accomplish this mission, OPM is responsible for conducting 90% of the background investigations for the Federal Government. OPM serves over 100 agencies with over 1,000 security offices worldwide by providing background investigations on their Federal applicants, employees, military members, and contractor personnel. The investigations range from the minimum level of investigation required for low risk public trust positions or positions that require a Confidential or Secret security clearance, to extensive field investigations for high risk public trust positions or those that require a Top Secret security clearance.

OPM expects to conduct over 2.3 million investigations this fiscal year. Over 260,000 of the investigations require field investigators to check records, interview sources, and summarize the results in reports of investigations. Another 669,000 may also require field work depending on the information developed in the investigation. With almost 7,500 Federal and contract investigators working across the United States and in overseas locations, OPM must rely on its field investigators to be honest, trustworthy, and professional, and follow instructions to ensure their work complies with national standards for coverage and quality.

Investigative standards were established for all government civilian, military, and contractor personnel requiring access to classified information and are used by government agencies and departments as the investigative basis for final clearance determinations. The investigative standards stipulate the coverage period required for the initial investigations and reinvestigations, such as National Agency Check with Local Agency Checks and Credit Check (NACLC), Single Scope Background Investigations (SSBI), and SSBI-Periodic Reinvestigation. The investigative standards also specify the type of sources to be interviewed, the information to be obtained from these sources, and the number of sources to be contacted. OPM's background investigation must comply with the investigative standards.

In addition, the employing or sponsoring Federal agencies are responsible for adjudicating the results of the background investigation and determining the person's suitability for employment and/or eligibility for a security clearance. The agencies rely on the integrity and completeness of OPM's background investigation when making their adjudicative decisions. If a report of investigation contains incorrect or fraudulent information, a qualified candidate may be denied employment or an unsuitable person may be cleared and allowed access to Federal facilities or systems, or classified information. Clearly, the integrity of an OPM background investigation is paramount to protecting national security and promoting the efficiency of the Federal service.

Any question concerning the accuracy and truthfulness of the testimonies in the report of investigation makes the entire investigation suspect. It does not matter if the source would provide favorable information anyway or that a record check would have disclosed no record. The fact that testimony was attributed to a source who was not interviewed or the result of a record check was provided when the record was not checked is enough to raise doubts about the entire investigation and the other work the investigator claimed to have performed.

In addition, the actions of one employee can have a detrimental affect on the reputation and integrity of OPM's investigation program. The cost of investigating and correcting the investigator's cases is substantial – both in time and money. For that reason, OPM is serious about the character and conduct of its field investigators and requires each investigator to undergo an extensive training program – both on the job and in the classroom for Federal and contract employees – before the agent is allowed to work on his or her own. In addition, all field investigators – both Federal and contractor – are issued a handbook and the first chapter is titled *Investigator's Qualities, Conduct, Responsibilities, and the Government Code of Ethics.* The first sentence reads, "The principal function of the investigator is to obtain **factual** information." (Emphasis added.) The investigators are also told:

- The Government expects them to display the utmost professionalism in their work;
- Their conduct, both on and off the job, must be above reproach and beyond accusation;
- They are representatives of the Federal Government and must be respectful of subjects and sources, their property, and privacy; and,
- NEVER falsify, manufacture, or enhance testimony, or in any way misrepresent any information collected from sources.

In addition, the investigators are told they must adhere to the Federal Government Employee Code of Ethics, as well as other statutes and regulations governing the conduct of Federal employees, and that they are responsible for reading, understanding, and wholly complying with the Code of Ethics. "To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each Federal employee shall respect and adhere to the fundamental principles of ethical service." The Principles of Ethical Conduct include, but are not limited to:

- Public service is a public trust requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain;
- Employees shall put forth honest effort in the performance of their duties; and,
- Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated pursuant to this order.

Mr. Payton's actions as a contract investigator for OPM clearly violated these requirements. There should be no doubt that Mr. Payton's actions were knowing and intentional, and were without regard to his responsibilities as an investigator representing OPM and the U.S. Government.

The success of OPM's investigation program relies of the quality and dedication of its employees, the cooperation and openness of the sources we contact, and the trust its customer agencies and the American public have in its products and services. Without question, the nature and notoriety of Mr. Payton's actions damaged OPM's reputation, but to what extent, we may never know.

When we speak of damages, we are often referring to injuries to a person requiring medical intervention or damage to personal property that can be replaced. A monetary value can be determined from medical bills, lost wages, and property replacement. In this instance, the damage Mr. Payton caused to OPM's investigations program cannot be so easily determined. The risks posed to National Security are an intangible item and cannot be measured.

3

We trust the Court to impose an appropriate sentence and penalties against Mr. Payton to show this type of conduct is not tolerated by the Court or OPM.

Joy FAIRTILE      DEP ASSOC DIRECTOR                          8/22/08
(PRINT NAME)         (TITLE)              (SIGNATURE)          (DATE)